**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **VERONICA BANKS** | § | |
| | § | |
| **v.** | § | **No. 5:25-CV-00111-JRG-JBB** |
| | § | |
| **EQUIFAX INFORMATION SERVICES LLC** | § | |
| | § | |
| | § | |

---

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**[1]

---

Before the Court is Defendant Equifax Information Services, LLC's Motion to Dismiss Plaintiff's Complaint. Dkt. No. 7. Plaintiff has filed a response (Dkt. No. 14), to which Equifax has filed a reply (Dkt. No. 15), and Plaintiff has filed a sur-reply (Dkt. No. 17). Plaintiff has also filed a Notice of Supplemental Authority (Dkt. No. 21), attaching a report and recommendation issued in the Eastern District of Texas: *Stafford v. TransUnion, L.L.C., et al.*, Cause No. 4:25-cv-00921-JDK-JDL, Dkt. No. 25 (E.D. Tex. Nov. 17, 2025). Having carefully considered the relevant briefing, the undersigned recommends Equifax's motion to dismiss be **DENIED**.

## I.   BACKGROUND

Plaintiff Veronica Banks, proceeding *pro se*, filed this action against Defendant Equifax information Services LLC ("Equifax") asserting violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681g(a)(1). According to her complaint, Plaintiff requested consumer credit disclosures from Consumer Reporting Agency Equifax on July 9, 2025, through www.annualcreditreport.com. Dkt. No. 1, ¶¶ 5-6, 9, 27-32. Plaintiff alleges Equifax's responsive disclosure omitted the full account numbers, account information, and payment history "relating

---

[1] The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636.

to the Credit One, LLC, National Credit Adjusters, Midland Credit Management, (2) Portfolio Recovery Associates, (2) [sic: (3)] LVNV Funding LLC, Mariner Finance and Discharged CH-7 trade lines." *Id.*, ¶ 12. Plaintiff further alleges this information had been reported to Equifax by a data furnisher and was contained in the file at the time of Plaintiff's request. *Id.*, ¶¶ 13, 19.

Plaintiff alleges the absence of the account numbers, missing account information and payment history in the disclosure caused Plaintiff "great frustration and emotional distress when trying to understand [and verify the] credit report" and decreased Plaintiff's ability to understand the consumer credit disclosure, identify the accounts, and compare those accounts with Plaintiff's own records. *Id.*, ¶¶ 24, 26; *see also id.*, ¶ 17 (alleging that absent such information "a consumer is reduced to, at best, playing detective and, at worst, guessing as to whether the information in their report is accurate"). Plaintiff also alleges this partially incomplete disclosure contains "collection information" that stays on a credit report for up to seven years from the date the account first became past due and generally has a "negative impact" on a credit score. *Id.*, ¶ 18. Plaintiff alleges the omissions stem from "widespread systemic problems" in Equifax's automated systems and Equifax knows of the problems but has done nothing to fix them, "despite the large numbers of consumers affected." *Id.*, ¶¶ 20-21, 30-33.

Based on these allegations, Plaintiff asserts Equifax failed to clearly and accurately disclose all information contained in Plaintiff's credit file in violation of 15 U.S.C. § 1681g(a). *Id.*, ¶¶ 10, 22, 39. Plaintiff alleges this conduct was intentional, motivated by Equifax's desire to avoid costs and increase profits, warranting statutory and punitive damages under 15 U.S.C. § 1681n, or alternatively, negligent, entitling Plaintiff to actual damages under 15 U.S.C. § 1681o. *Id.*, ¶¶ 41-42.

Equifax argues Plaintiff lacks Article III standing, an issue properly considered under Federal Rule of Civil Procedure 12(b)(1). According to Equifax, Plaintiff does not allege she suffered any actual damages as a result of Equifax's alleged conduct, a requirement for recovery when negligence is alleged. Dkt. No. 7 at 5. Equifax further asserts Plaintiff does not allege that Equifax's alleged inaction was willful, a requirement for awarding statutory or punitive damages. *Id.* at 5-6. In her response, Plaintiff argues she is not required to allege actual damages in order to recover statutory and punitive damages for willfulness; nevertheless, she claims she has alleged injuries sufficient to support both her negligence claims and willfulness claims. *See* Dkt. No. 17 at 7.

Equifax also moves to dismiss Plaintiff's claims under the FCRA under Federal Rule of Civil Procedure 12(b)(6). More specifically, Equifax argues Plaintiff's claims do not involve omitted information bearing on her "creditworthiness," so that even accepting Plaintiff's allegations as true, Plaintiff's claim is not actionable under § 1681g. Dkt. No. 7 at 3-4. In her response, Plaintiff argues the missing data, which is "integral to assessing creditworthiness," rendered the disclosure incomplete, violating § 1681g and resulting in injury to Plaintiff. Dkt. No. 14 at 2.

As explained below, Plaintiff's allegations, taken as true, are sufficient to establish standing and to state a claim under the Fair Credit Reporting Act.

## II. LEGAL STANDARDS

### A. Standing under Rule 12(b)(1)

A case is properly dismissed under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Article III of the United States Constitution confines the

3

jurisdiction of a federal court to an actual "case[ ]" or "controvers[y]." U.S. Const. art. III, § 2. The standing doctrine implements this constitutional limitation by requiring the plaintiff to establish "a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf." *Johnson v. Digital Fed. Credit Union*, No. 3:25-CV-1836-D, 2025 WL 2773824, at \*2 (N.D. Tex. Sept. 26, 2025) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)) (citation and internal quotation marks omitted in *Johnson*). The party asserting jurisdiction bears the burden to prove jurisdiction exists. *Id.*

A defendant's challenge to a federal court's subject matter jurisdiction may be based on "the sufficiency of the facts pleaded in the complaint (a 'facial' attack)" or "the accuracy of the facts underpinning the claimed federal jurisdiction (a 'factual' attack)." *Fontenot v. Whitehouse Indep. Sch. Dist.*, No. 6:24-CV-450-JCB-KNM, 2025 WL 2947018, at \*2 (E.D. Tex. July 25, 2025), *report and recommendation adopted*, 2025 WL 2544014 (E.D. Tex. Sept. 4, 2025) (citation omitted). "An attack is 'factual' rather than 'facial' if a defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Id.* (quoting *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981))). When, as here, the party files a facial attack without supporting evidence, the court looks only at the sufficiency of the allegations in the complaint and assumes them to be true. *Johnson v. Digital Fed. Credit Union*, No. 3:25-CV-1836-D, 2025 WL 2773824, at \*1 (N.D. Tex. Sept. 26, 2025) (citation omitted).

**B.     Rule 12(b)(6)**

A complaint must be dismissed if the plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Southern Christian Leadership Conference v. Supreme Ct.*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.

### III. APPLICABLE LAW

**A.    Fair Credit Reporting Act**

The FCRA seeks to ensure "fair and accurate credit reporting." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016), *as revised* (May 24, 2016) (quoting 15 U.S.C. § 1681(a)(1)). To achieve this end, the FCRA regulates the creation and the use of "consumer report[s]" by "consumer reporting agenc[ies]" ("CRAs") for certain specified purposes, including credit transactions, insurance, licensing, consumer-initiated business transactions, and employment. *Id.* at 334-35 (citing 15 U.S.C. §§ 1681a(d)(1)(A)-(C); § 1681b) (internal footnotes omitted). The FCRA applies to companies that regularly disseminate information bearing on an individual's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." *Id.* at 335 (quoting 15 U.S.C. § 1681a(d)(1)). The FCRA defines a "consumer report" as "any written, oral, or other communication of any information" that has a "bearing on a consumer's *credit worthiness*. . . ." 15 U.S.C. § 1681a(d)(1) (emphasis added).

The FCRA also sought to address the consumer's "lack of access to the information in [her] file [and] the difficulty in correcting inaccurate information." *Kelly v. RealPage Inc.*, 47 F.4th 202, 206 (3d Cir. 2022) (citation omitted). To that end, the FCRA broadly defined "file" to mean "all of the information on th[e] consumer recorded and retained by a consumer reporting agency regardless of how the information is stored," 15 U.S.C. § 1681a(g), and it required CRAs, upon request, to "clearly and accurately disclose to the consumer" six enumerated categories of information, including "[a]ll information in the consumer's file at the time of the request" and "[t]he sources of [that] information." *Id.* (quoting 15 U.S.C. § 1681g(a)(1), (a)(2)).

In addition to specifying the "[c]onditions and form of disclosure to consumers," *id.* § 1681h, and the procedures for consumers to dispute "the completeness or accuracy of any item of information ... in a consumer's file" with a CRA, *id.* § 1681i, Congress also gave consumers a powerful remedy to enforce their rights by creating private causes of action, for both willful and negligent violations of the FCRA, including statutory damages and attorney's fees. *Id.* (citing 15 U.S.C. §§ 1681n, 1681o; also citing *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 323 (3d Cir. 2018) ("Congress granted the consumer a right to receive a copy of his report before adverse action is taken, and provided for statutory damages plus attorney's fees for willful noncompliance[.]")). To prove a case of negligent noncompliance, a plaintiff must produce some evidence of actual damages caused by the violation. *Taylor v. Screening Reps., Inc.*, 294 F.R.D. 680, 686 (N.D. Ga. 2013) (citation omitted). To assert a claim for willful noncompliance, a plaintiff does not need to prove actual damages. *Id.* at 687 (citation omitted).

## IV. DISCUSSION

**A.      Standing**

To establish standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338 (citations omitted). Here, only the first element of standing (injury in fact) is at issue. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is concrete and particularized' and 'actual or imminent,' not conjectural or hypothetical." *Id.* at 339 (citation omitted). However, one cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 341 (citation omitted).

Taking Plaintiff's allegations as true, Plaintiff has sufficiently pleaded injury in fact. *See* Dkt. No. 1, ¶¶ 16-17, 26 (alleging Equifax's disclosure failed to provide data necessary to research and evaluate the accuracy of the information contained in the credit file); ¶ 23 (alleging the failure to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III); ¶ 24 (alleging the inaccurate disclosure caused Plaintiff "great frustration and emotional distress").

Regarding Plaintiff's allegation of negligence, Equifax argues Plaintiff only alleges "a technical, informational injury" which does not satisfy the concrete-harm requirement for injury in fact. Dkt. No. 7 at 5. Regarding Plaintiff's request for statutory and punitive damages, Equifax asserts Plaintiff "does not allege that Equifax's alleged inaction was willful, a requirement for awarding statutory or punitive damages under the FCRA." *Id.* at 5-6. As explained below, both arguments are without merit.

Equifax correctly cites the Supreme Court as holding "informational injury that causes no adverse effects cannot satisfy Article III." *See TransUnion L.L.C. v. Ramirez*, 594 U.S. 413, 442 (2021). However, "*TransUnion* did not cast doubt on the broader import" of earlier decisions which recognized that an "informational injury," where a plaintiff alleges that she "failed to receive. . . information" to which she is legally entitled, is sufficiently concrete to confer standing. *Kelly*, 47 F.4th at 211-12 (citing *TransUnion*, 141 S. Ct. at 2204, 2214) (other citations omitted). According to the Third Circuit, "a plaintiff need only allege that she was denied information to which she was legally entitled, and that the denial caused some adverse consequences related to the purpose of the statute." *Id.* at 212.

Other circuit courts have similarly found non-disclosure a sufficiently concrete injury where it prevented the plaintiff from receiving "fair and accurate reporting of their credit information," *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1100 (9th Cir. 2022) (noting the alleged procedural violations protected substantive rights by requiring disclosures necessary for informed decision-making and finding the alleged violations of § 1681g were sufficient to confer standing), or affected their ability to "obtain the information [they] needed to cure [their] credit issues, [or] ultimately resolve those issues," *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 347 (4th Cir. 2017). "In sum, rather than working a sea change to its informational injury jurisprudence, the Supreme Court in *TransUnion* simply reiterated the lessons of its prior cases: namely, to state a cognizable informational injury a plaintiff must allege that 'they failed to receive. . . required information,' and that the omission led to 'adverse effects' or other 'downstream consequences,' *TransUnion*, 141 S. Ct. at 2214 (internal quotation omitted), and such consequences have a nexus to the interest Congress sought to protect, *Spokeo*, 578 U.S. at 342, 136 S.Ct. 1540." *Kelly*, 47 F.4th at 214.

Applying these precepts here, Plaintiff's allegations are sufficient for standing purposes because Plaintiff alleges the omission of information to which she claims entitlement, "adverse effects" that flow from the omission, and the requisite nexus to the "concrete interest" Congress intended to protect. *Id.* First, unlike *TransUnion* where the plaintiffs alleged only a formatting violation, and unlike cases where courts have held the plaintiffs' allegations about missing information were obviously speculative,[2] here, Plaintiff clearly alleges that Equifax's disclosure omitted full account numbers, account information, and payment history for nine specific accounts, hindering her ability to verify and understand her credit file. Dkt. No. 1, ¶¶ 24, 26.

Second, Plaintiff also alleges that Equifax's violations of the FCRA caused her adverse effects in the form of at least great emotional distress. The Fifth Circuit has "recognized that 'emotional distress' is a traditional harm that satisfies *TransUnion*'s concreteness requirement." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024) (citing *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 824 (5th Cir. 2022)) (examining standing for claim under FDCPA and stating a "plaintiff can sue for damages if the risk materializes or causes a separate injury-in-fact, such as emotional distress"). Actual damages may include mental distress, even in the absence of out-of-pocket expenses or physical injury. *Bacharach v. Suntrust Mortg., Inc.*, No. CIV.A. 14-962, 2015 WL 6442493, at *4 (E.D. La. Oct. 23, 2015), *aff'd*, 827 F.3d 432 (5th Cir. 2016) ("Damages recoverable under the FCRA 'include humiliation or mental

---

[2] *See, e.g. Egbufoama v. Experian Info. Sols., Inc.*, No. 1:24-CV-1655-ELR-JSA, 2024 WL 5093081, at *2 (N.D. Ga. Oct. 11, 2024) (generic allegations that disclosure was not complete without any specific facts identifying what was missing), *report and recommendation adopted*, 2024 WL 5339325 (N.D. Ga. Oct. 30, 2024); *Johnson v. Experian Info. Sols., Inc.*, No. 2:18-CV-114-JAM-EFB PS, 2019 WL 951425, at *2 (E.D. Cal. Feb. 27, 2019) ("Significantly, plaintiff does not identify any specific information that was wrongfully withheld, nor does he provide any basis for his belief that defendants failed to provide him with all information in his file."); *Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *7 (S.D. Fla. June 29, 2018) ("Plaintiff does not point to what information is actually missing from what he received from Defendants or what specific facts lead him to accuse Defendants of failing to meet their disclosure requirements under the FCRA.").

distress, even if the consumer has suffered no out-of-pocket losses' due to a denial of credit."). Further, it is "enough for standing purposes for plaintiffs to allege that, as a result of an omission, they experienced the adverse effects of being 'unable to. . . ensure fair and accurate reporting of their credit information.'" *Kelly*, 47 F.4th at 215 (citation omitted).

Equifax also argues Plaintiff fails to allege a causal link between any damages and Equifax's conduct. Dkt. No. 7 at 5. However, Plaintiff sufficiently alleges that the "lack of accurate, full account numbers, missing account information and payment history" provided by Equifax caused Plaintiff "great frustration and emotional distress" when trying to understand her credit report and verify it against her own records. Dkt. No. 1, ¶ 24. Plaintiff further alleges the omissions resulted from automated templates used by Equifax for annualcreditreport.com requests, which Equifax has known about for years, causing her (and other consumers) harm. *Id*., ¶¶ 20-21, 27-35, 40-42.

Thus, Plaintiff has sufficiently alleged actual damages traceable to Equifax's alleged conduct as required for negligent noncompliance. These alleged harms supply an injury in fact.

Regarding Plaintiff's request for statutory and punitive damages, Equifax asserts Plaintiff "does not allege that Equifax's alleged inaction was willful, a requirement for awarding statutory or punitive damages under the FCRA." Dkt. No. 7 at 5-6. Although Plaintiff does not use the term "willful," Plaintiff does allege a willfulness claim in addition to her negligence claim. *See* Dkt. No. 1, ¶¶ 21, 33-35, 40 (alleging Equifax's conduct was "knowing and repeated" and "intentional" and that Equifax has known of the issues for years but has done nothing to fix them); ¶¶ 41-42 (alleging Equifax's conduct was intentional, motivated by Equifax's desire to avoid costs and increase profits, warranting statutory and punitive damages under 15 U.S.C. § 1681n, or alternatively, negligent, entitling Plaintiff to actual damages under 15 U.S.C. § 1681o). A court in

this district has found nearly identical allegations alleged a "willful violation." *Stafford v. TransUnion, L.L.C., et al.*, No. 4:25-cv-00921-JDK-JDL, Dkt. No. 25 (Report and Recommendation) at 5-6 (E.D. Tex. Nov. 17, 2025) (further noting cases which suggest the FCRA permits awards of statutory damages where the violation is willful and does not necessarily require actual damages as a precondition for standing).

For all these reasons, the undersigned recommends the Court deny Equifax's motion to dismiss Plaintiff FCRA claims for lack of Article III standing.

**B.    Failure to State a Claim**

Equifax also moves to dismiss Plaintiff's 15 U.S.C. § 1681g claims under Rule 12(b)(6). According to Equifax, the alleged missing information does not bear on a consumer's creditworthiness (as required by the definition of a "consumer report"), so even accepting Plaintiff's allegations as true, Plaintiff's claim is not actionable under § 1681g(a)(1) (which requires CRAs to accurately disclose all information in the "consumer's file at the time of the request"). Dkt. No. 7 at 3-4.

Equifax's specific argument (Dkt. No. 7 at 3-4) is as follows: Section 1681g requires disclosing information in a consumer's "file." Several out-of-district courts have explained that a "file," for purposes of § 1681g, is "information included in a consumer report." And because 15 U.S.C. § 1681a(d)(1)(A) of the FCRA defines "consumer report" to mean information "bearing on a consumer's credit worthiness," Equifax contends that plaintiffs can only raise claims concerning (missing or inaccurate) information that bears on their creditworthiness. Equifax then asserts that because the Plaintiff here is complaining about information that *does not* bear on her creditworthiness, she does not state a claim. Equifax's argument fails both legally and factually.

11

Legally, Equifax fails to persuasively show that Plaintiff's "file" necessarily is limited to information included in a "consumer report." *See Maude v. Equifax Information Services, LLC*, No. 25-cv-61421-VALLE, Order on Defendant's Motion to Dismiss (Dkt. No. 17) at 6 (S.D. Fla. Nov. 18, 2025) (*comparing* 15 U.S.C. § 1681a(d)(1) *with* 15 U.S.C. § 1681a(g) (providing different definitions for "consumer report" and "file")). Indeed, the court in *Stafford* persuasively rejected Equifax's same argument in denying a motion to dismiss nearly identical claims as those alleged here. *See Stafford*, No. 4:25-cv-00921-JDK-JDL, Dkt. No. 25 at 7 ("The Fifth Circuit has not weighed on what is required for pleading a claim under 15 U.S.C. § 1681g(a)(1). As it stands, there is no precedent in this circuit or any other persuasive opinion that takes the narrower position Equifax is advocating for. . . . For this reason, the court sees no reason why the full account numbers, internal data, and payment history are not part of the consumer file as alleged."). As noted by the magistrate judge, the statutory definitions separate "consumer report" and "file," defining file more broadly as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* (quoting 15 U.S.C. § 1681a(g)). Section § 1681g(a)(1) uses the term "file," not "consumer report," including broader disclosure requirements upon request with narrowly-outlined exceptions. *Id.* Here, Plaintiff contends she received less information than her full consumer file discloses, and as held in *Stafford*, "the court sees no reason why the full account numbers, internal data, and payment history are not part of the consumer file as alleged." *Id.*

The cases Equifax relies on to the contrary are non-binding and factually or procedurally distinguishable from this case. For example, *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908-10 (7th Cir. 2007) addressed whether a consumer's "file" included the purge date (i.e., the date on which information about a delinquent account would be removed from the consumer's report),

12

which is an internal record keeping mechanism, different from a plaintiff's account information or payment history.[3] *See Maude*, No. 25-cv-61421-VALLE, Dkt. No. 17 at 6.

Factually, Equifax's arguments fail because Plaintiff's allegations regarding the missing information *would* plausibly bear on a consumer's creditworthiness. *See id.* at 7 (noting the reasonable inference that a creditor might use the alleged missing account numbers, account information, and payment history to evaluate a consumer's creditworthiness); *see also Stafford*, No. 4:25-cv-00921-JDK-JDK, Dkt. No. 25 at 7 (assuming Equifax's "narrower interpretation" regarding creditworthiness applied and holding the omission of payment history on tradelines would bear on creditworthiness).

Equifax's contrary view—that "completeness of data" (e.g., payment history and date of last activity) in a credit file does not bear on a consumer's creditworthiness—is based on its reading of *Harris v. TransUnion, L.L.C.*, No. 1:25-CV-192-MLB-JKL, 2025 WL 2270156, at *7 (N.D. Ga. May 23, 2025) ("*Harris I*"), *report and recommendation adopted*, 2025 WL 2270149 (N.D. Ga. July 30, 2025). *See* Dkt. No. 7 at 4. However, Equifax's reliance on *Harris I* is misplaced.

In that case, the magistrate judge recommended the defendant's motion for judgment on the pleadings be granted but that the plaintiff be given an opportunity to amend. Addressing the insufficiency of the plaintiff's claims under § 1681e(b) and § 1681i(a), the magistrate judge noted "the lack of a comprehensive account or payment history is of no matter when the report, viewed as a whole, does not mislead the user about the status of the account," the language relied upon by Equifax here. *Harris I*, 2025 WL 2270156, at *7. However, in addressing the insufficiency of the

---

[3] The Third Circuit also distinguished *Gillespie*, noting the purge date at issue in that case was an internal record-keeping item, used only to determine when transactions in a consumer's history should no longer be reported to those requesting credit reports; thus, the court held that Congress did not intend to include it within the definition of "file." *Cortez v. Trans Union, L.L.C.*, 617 F.3d 688, 712 (3d Cir. 2010) (citing *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 910 (7th Cir. 2007)).

13

plaintiff's claim under the relevant section—that his full payment history was missing from the defendant's disclosures to him in violation of § 1681g(a)(1)—the magistrate judge merely noted that the plaintiff did not ever allege that he requested his full consumer file or that the full payment history was actually included in his file but not disclosed to him. *Id.* at *8.

Notably, in a later opinion addressing the allegations in the plaintiff's amended complaint, the *Harris* court held the plaintiff had plausibly alleged that the defendant failed to disclose information in violation of § 1681g(a)(1). *Harris v. TransUnion, L.L.C.* ("*Harris II*"), No. 1:25-CV-192-MLB-JKL, 2025 WL 3306434, at *7 (N.D. Ga. Oct. 20, 2025) ("Plaintiff has identified specific information—account numbers and/or payment histories—that were truncated or missing from specific accounts in Defendant's disclosure of his consumer file, and also alleges that the missing information was disclosed to Defendant and in fact contained in its file on him. Only after the benefit of discovery can the Court say whether such information was in fact in Defendant's consumer file for Plaintiff and whether Defendant improperly failed to disclose it to Plaintiff. But for now, Plaintiff has plausibly alleged that Defendant failed to disclose information in violation of § 1681g(a)(1)."). Thus, Equifax's reliance on *Harris* is misplaced.

Take a step back: Equifax does not dispute that Plaintiff has sufficiently alleged that she requested her consumer file and that the full account numbers and the missing payment history were actually included in her file but not disclosed to her. Dkt. No. 1, ¶¶ 10, 12, 16; *see also id.*, ¶¶ 13, 19 (further alleging this information had been reported to Equifax by a data furnisher and was contained in the file at the time of Plaintiff's request). Courts have allowed similar claims based on incomplete account numbers and missing payment history to survive a Rule 12(b)(6) motion to dismiss. *See Washington v. Equifax*, No. 3:19-CV-00154, 2019 WL 2443126, at *2-3 (M.D. Tenn. June 12, 2019) (finding at the motion to dismiss stage that it was not clear whether

the plaintiff's file showed an incomplete account number because the furnisher reported a truncated account number to the CRA or because the CRA itself truncated the account number and concluding, in the absence of binding authority stating that a truncated account number is a clear and accurate disclosure, the plaintiff stated a plausible claim under § 1681g); *see also Rawls v. Trans Union, L.L.C.*, No. 1:24-CV-3948-VMC-CCB, 2025 WL 2429105, at *5 (N.D. Ga. Aug. 5, 2025) (noting it was not clear at the early 12(b)(6) stage whether the defendant redacted the account numbers or whether the furnishers reported redacted account numbers to the defendant, and finding the plaintiff's allegation of specific information that the defendant failed to disclose was enough to state a plausible claim), *report and recommendation adopted*, 2025 WL 3567186 (N.D. Ga. Sept. 17, 2025).

In sum, Plaintiff has plausibly alleged Equifax failed to disclose information in violation of § 1681g(a)(1). Plaintiff's allegations are sufficient to state a claim upon which relief may be granted. The undersigned recommends Equifax's Rule 12(b)(6) motion to dismiss be denied.

## V. RECOMMENDATION

Based on the foregoing, it is

**RECOMMENDED** that Defendant Equifax Information Services, LLC's Motion to Dismiss Plaintiff's Complaint (Dkt. No. 7) be **DENIED**.

### Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed

determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 9th day of February, 2026.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE